## COLCOTT STOWELL
### v.
## LEVI G. BAIR.

CHATTEL MORTGAGE—CROPS TO BE RAISED IN THE FUTURE.—A chattel mortgage must operate *in præsenti* upon and pass the title to the mortgagee, and to be operative to pass such title, the thing mortgaged must be *in esse* in the same sense as in the case of a perfect bargain and sale which vests the title in the vendee. But crops to be raised in the future, by the industry of the mortgagor, the seed not being in the ground at the time of executing the mortgage, have no potential existence, and do not pass under the mortgage; and the mortgagee, without taking possession, cannot hold them as against an execution creditor of the mortgagor.

APPEAL from the Circuit Court of Mercer county; the Hon.

Stowell v. Bair.

Arthur A. Smith, Judge, presiding. Opinion filed February 4, 1880.

Mr. Eugene Canfield, for appellant; argued that the owner of land in possession may make a valid present grant of crops thereafter to be grown, and cited Benjamin on Sales, § 78; Herman on Chattel Mortgages, § 44; 14 Viner's Ab. 50; Shep. Touch. 242; Grantham v. Hawley, Hob. 132; Wood & Foster's case, 1 Leon, 42; Robinson v. Macdonald, 5 M. & S. 228; Petch v. Lutin, 15 M. & W. 110; Carr v. Allatt, 3 Hurls. & N. 964; Tyson v. Pympson, 2 Hay, 142; Holroyd v. Marshall, 9 Jur. N. S. 213; Tonville v. Casey, 1 Murphy, 389; Robinson v. Ezzell, 72 N. C. 231; Ravesils v. Alston, 5 Ala. 297; Adams v. Tanner, 5 Ala. 740; Robinson v. Mauldin, 11 Ala. 977; Mauldin v. Armisted, 14 Ala. 702; Jones v. Webster, 48 Ala. 109; McCarthy v. Blevins, 5 Yerg. 195; Jones v. Chamberlain, 5 Heisk. 210; Wyatt v. Watkins, 16 Alb. Law Jour. 205; Smith v. Atkins, 18 Vt. 465; Wilson v. Seibert, 8 Am. Law Reg. 680; Morrill v. Noyes, 3 Am. Law Reg. 18; Backhouse v. Jett, 1 Marsh. Cas. 511; Fowler v. Merrill, 11 How. 375; Ellett v. Butt, 1 Wood's C. C. 214; Butt v. Ellett, 19 Wall. 544; Van Hoozer v. Cory, 34 Barb. 12; Conderman v. Smith, 41 Barb. 404; Stamps v. Gilman, 43 Miss. 456; Sellers v. Lester, 48 Miss. 513; Everman v. Robb, 52 Miss. 653; Duke v. Strickland, 43 Ind. 494; Evans v. Merriken, 8 G. & J. 39; McGee v. Fitzer, 37 Tex. 27; Apperson v. Moore, 30 Ark. 56; Bank of Lansingburg v. Crary, 1 Barb. 542; Argrus v. Wasson, 51 Cal. 620; Jenks v. Smith, 1 Coms. 90.

Any property which is capable of an absolute sale may be the subject of mortgage : Jones v. Webster, 48 Ala. 109; Herman on Chattel Mortgages, 70; Rev. Stat. 1874, Chap. 95, § 1–4.

Parol evidence is admissable to identify the property mortgaged: Beach v. Derby, 19 Ill. 617; Pike v. Colvin, 67 Ill. 227; Bell v. Prewett, 62 Ill. 361.

Messrs. Williams & Lawrence, for appellee; that a chattel mortgage can only operate upon property in actual existence

at the time of its execution, cited Bank of Lansingburg v. Crary, 1 Barb. 551; Wadington v. Bristol, 2 Bos. & Pul. 462; Evans v. Roberts, 2 Barn. v. Cres. 829; Ellett v. Butt, 19 Wall. 546; Brainard v. Burton, 5 Vt.; Comstock v. Scales, 7 Wis. 159; Noyes v. Jackson, 55 Ga. 587; Hutchinson v. Ford, 9 Brush, 320.

McALLISTER, J.   One Summers, being indebted to Stowell, the appellant, in $2,600, January 3, 1877, gave the latter two promissory notes for $1,300 each, payable in one and two years, to secure which Summers executed to Stowell a chattel mortgage bearing that date, duly acknowledged and recorded, covering certain specified articles of personal property being then upon certain lands, also specifically described; then were these words: "Also all the crops of every description which may be raised on said above described premises during the years A. D. 1877 and A. D. 1878, the same to be fully cared for and harvested in a farmer-like manner, by the party of the first part."

In July, 1878, the appellee having recovered judgments against Summers, had executions issued and levied on wheat, corn and oats growing on said lands, which were sold thereunder and purchased by appellee.   Thereupon, Stowell, as such mortgagee, demanded the wheat, corn and oats so sold, and on refusal by appellee, Stowell brought replevin in the Mercer County Circuit Court, and on the trial before the court without a jury, the court found the issues for defendants, and Stowell appealed, and by agreement it was brought to this court.

The question is whether the mortgage in question, purporting to cover future crops, *fructus industriales*, gave the mortgagee a paramount title, as against the execution creditor, to the wheat, corn and oats in question, the seed for which had not been been sown or planted until long after the execution of such mortgage.   We shall assume, as incontestible law, that a chattel mortgage must operate *in præsenti* upon and pass the title to the mortgagee, upon condition, of course; and that to be operative to pass such title the thing must be *in esse*, in the same sense as in the case of a perfect bargain and sale, which vests the title in the buyer.   In relation to things

not yet in existence, or not belonging to the vendor, the law considers them as divided into two classes, one of which may be sold, while the other can only be the subject of an agreement to sell—of an executory contract. Things not yet existing which may be sold are those which may be said to have a potential existence; that is, things which are the natural product or expected increase of something already belonging to the vendor. A man may sell the crop of hay to be grown on his field, the wool to be clipped from his sheep at a future time, the milk that his cows will yield in the coming month, and the sale is valid. Benj. on Sales, Sec. 78.

These things last mentioned, and all things which are the product of the land as *fructus naturales*, may, though not in actual existence at the time, be regarded as in potential existence, and be the subject of an executed sale. But he can make a valid agreement to sell, not an actual sale, where the subject of the contract is something to be afterwards acquired, as the wool of any sheep or the milk of any cows that he may buy within a year, or any goods to which he may obtain title within the next six months, or other given time. There is some conflict in the authorities, but we think the reason and common sense of the thing is, that the crops of wheat, corn and oats, the seed for which even might not have been in existence when the mortgage was made, and was not put into the ground until the spring of 1878, had no potential existence on the 3d day of January, 1877, at which time the mortgagor had no idea, in all probability, as to the particular parts of land he would put into this or that crop, or how much of it, if any, he would cultivate for any particular crop. Such crops, *fructus industriales*, are entirely distinguishable from those of fields already in grass for hay, fruit orchards, etc., planted and in bearing condition, the products of which are *fructus naturales;* for as to the former, it depends upon the will, determination, labor and industry of the farmer when or how they ever exist at all, and when produced, as in this case, they are after-acquired property, while the latter class have their roots, the living agencies already in the soil, and being perennial, they are dependent only on the succession of the seasons for their growth and ma-

turity. Therefore the law regards them as having a potential existence even before they commence to grow in the form of the product. But the crops in this case, the seeds for which were not put into the ground until fifteen months after the mortgage, can no more properly be regarded as having a potential existence in the soil at the time of the mortgage than does the unbuilt ship in the timbers of the forest, or boots and shoes in the skins of the living herd. We have read but shall not undertake a review of the authorities cited in the elaborate brief of appellants' counsel, but content ourselves with referring to some cases of high authority which sustain our views of the law. Bank of Lansingburg v. Crary, 1 Barbour, 551, and authorities there cited.

In Jones v. Richardson, 10 Metcalf, 481, the court said : " That a person cannot grant or mortgage property of which he is not possessed, and to which he has no title, is a maxim of law too plain to need illustration, and which is illustrated by all the authorities." Moody v. Wright, 13 Met. 17; Milliman v. Neher, 20 Barbour, 37, and authorities cited; Cudworth v. Scott, 41 N. Hamp. 456; Hunt v. Bullock, 23 Ill: 324, where it was said : " It was not nor can it be claimed that at law any lien can be created by this mode of sale or pledge on property at the time having no existence, or not owned by the vendor or mortgagor. By its rules all such efforts at a sale or mortgage are regarded as nothing more than a mere executory agreement for a sale, and for its breach gives compensation in damages as for the non-performance of any other executory contract." In Gregg v. Sanford, 24 Ill. 17, it was held in such a case, if the mortgagee took possession before any other lien attached, his right would be paramount. In Titus v. Mabee, 25 Ill. 257, the doctrine of Hunt v. Bullock, *supra*, was re-affirmed.

In Gettings v. Nelson, 86 Ill. 593, the court said : " Any agreement in the spring of 1875 that Nelson should have a lien upon the crop to be raised that year for the payment of a team and wagon sold to Palmer, or for hay and corn to be furnished for his teams, or for provisions for his family, or that the crop should be Nelson's until such payment should be made, would have been a contract in reference to property not then in exist-

ence, and could not operate upon the crop after being raised as a transfer of it by way of pledge or mortgage, at least not until after the taking possession thereof by Nelson."

We are unable to conceive how any other conclusion can be arrived at in this case than that, without a bill in equity to subject these crops to the operation of the mortgage, brought after they had an existence, or possession by the mortgagee before the execution, lien or levy, the mortgagee could not hold them as against the execution creditor, and therefore must affirm the judgment.

Affirmed.